# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

STATE OF MICHIGAN *ex rel* GURGANUS v CVS CAREMARK CORPORATION
CITY OF LANSING v RITE AID OF MICHIGAN, INC
CITY OF LANSING v CVS CAREMARK CORPORATION

Docket Nos. 146791, 146792, and 146793. Argued January 16, 2014 (Calendar No. 4). Decided June 11, 2014.

Marcia Gurganus, as relator, brought a qui tam action on behalf of the state of Michigan in the Kent Circuit Court against CVS Caremark Corporation, CVS Pharmacy, Inc., Caremark, L.L.C., and other Michigan pharmacies, alleging that they had failed to comply with MCL 333.17755(2) when they submitted prescription drug claims to the state for generic drugs dispensed to Medicaid beneficiaries. Under MCL 333.17755(2), when a pharmacist receives a prescription for a brand-name drug and instead dispenses the generic equivalent, he or she must pass on the savings in cost to the purchaser. Gurganus alleged that defendants had failed to pass on the savings in cost and therefore submitted false claims to the state in violation of the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq*. The city of Lansing and Dickinson Press Inc. (both third-party payors for prescription medication) brought a class action in the Kent Circuit Court against all but two of the defendants in the qui tam action, and the city, Dickinson, and Scott Murphy (who is a consumer of prescription medication) brought a second class action against those remaining defendants. The class actions alleged violations of MCL 333.17755(2) and the Health Care False Claim Act (HCFCA), MCL 752.1001 *et seq*., specifically, that the pharmacies systematically violated MCL 333.17755(2) by charging prices for generic drugs that produced a higher profit margin than they achieved by selling the equivalent brand-name drugs and made false statements in contravention of the HCFCA when they submitted claims for private insurance reimbursement that were not in compliance with MCL 333.17755(2). The court, James Robert Redford, J., granted defendants summary disposition, dismissing all three cases without prejudice and holding that the complaints had alleged no acts undertaken in Michigan by any defendant and had therefore failed to plead sufficient facts, relying instead on unsupported inferences. Rather than providing pricing data specific to defendants, the plaintiffs based the allegations in their second amended complaints on specific proprietary information acquired by Gurganus that revealed the wholesale costs and sales prices of brand-name and generic drugs sold in 2008 at a West Virginia Kroger pharmacy where Gurganus had been employed. Plaintiffs alleged that because Kroger Co. (a defendant in this case) operated retail pharmacies nationwide, acquired prescription drugs through central purchasing functions serving all its pharmacy locations, and acquired the majority of its prescription drugs from wholesalers, the wholesale costs of the other defendants were likely not materially different and one could extrapolate from the West Virginia data the wholesale costs of each defendant in Michigan. The

court granted summary disposition with prejudice for plaintiffs' failure to state a claim on which relief could be granted, noting that there was a complete lack of any specificity concerning transactions. The court also ruled that there is no private right of action to enforce MCL 333.17755(2) or the HCFCA. The Court of Appeals, M. J. KELLY, P.J., and HOEKSTRA and STEPHENS, JJ., affirmed in part and reversed in part in an unpublished opinion per curiam, issued January 22, 2013 (Docket Nos. 299997, 299998, and 299999). The panel affirmed the trial court's holding that there is no implied right of action under MCL 333.17755(2) but held that the HCFCA does allow a private right of action. The panel also held that MCL 333.17755(2) applies to all transactions in which a generic drug is dispensed and not just to transactions in which a generic drug is substituted for its brand-name equivalent. Because the trial court was required to accept as true plaintiffs' allegations that the wholesale costs for generic and brand-name drugs did not materially differ from those of the West Virginia pharmacy, the Court of Appeals concluded that plaintiffs' claims under the MFCA and the HCFCA could proceed, reasoning that the facts that plaintiffs' complaints did not allege transactions based on information specific to defendants and relied on some inferences were not fatal to the complaints because plaintiffs were not required to prove their cases in their pleadings. Defendants sought leave to appeal, and the city, Dickinson, and Murphy sought leave to cross-appeal. The Supreme Court granted the applications for leave to appeal, but limited its grant of leave to cross-appeal to the issue of whether a private cause of action existed under MCL 333.17755(2). 495 Mich 857 (2013).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

MCL 333.17755(2) requires that when a generic drug is substituted for a brand-name drug (and only then), the pharmacist must pass on the difference between the wholesale cost of the brand-name drug and the wholesale cost of the generic drug.

1. MCL 333.17755(1) states that when a pharmacist receives a prescription for a brand-name drug product, the pharmacist may, or upon request must, dispense a lower cost generic drug. MCL 333.17755(2) specifies that if a pharmacist dispenses a generically equivalent drug product, he or she must pass on the savings in cost to the purchaser or to the third-party payment source if the prescription purchase is covered by a third-party pay contract, with the savings in cost defined as the difference between the wholesale cost to the pharmacist of the two drug products. The introductory phrase of Subsection (2), immediately following as it does Subsection (1) governing transactions in which generic drugs are dispensed in lieu of brand-name drugs, indicates that Subsection (2) only applies when the pharmacist is engaged in a substitution transaction described in Subsection (1), and the Court of Appeals erred by holding otherwise.

2. Defendants argued that MCL 333.17755(2) only requires pharmacists to sell the substituted generic drug at the same price that a purchaser would pay had the generic been prescribed in the first instance. Under the statute, however, the amount a pharmacist must pass on to a purchaser or third-party payer is the difference between the wholesale cost of the two drugs. In other words, the savings in cost equals the brand-name wholesale cost minus the generic wholesale cost. Nonetheless, as a practical matter Subsection (2) provides a maximum allowable profit in a substitution transaction regardless of whether the pharmacist dispenses a

generic drug or a brand-name drug; the pharmacist cannot make more dispensing a generic drug than he or she could dispensing a brand-name drug.

3. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint. MCR 2.112(B)(1) provides a heightened pleading standard for fraud claims, requiring that for allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity. Plaintiffs' complaints relied on wholesale drug cost data from a single Kroger pharmacy in West Virginia, extrapolating from that proprietary data thousands of allegedly fraudulent transactions by defendants in violation of MCL 333.17755(2). In doing so, plaintiffs relied on the assumptions that (1) each defendant acquired its prescription drugs from just a few wholesalers, (2) the prescription drug purchasing power of each defendant was substantially the same, (3) the wholesale prices each defendant paid were materially the same, and (4) the wholesale prices did not change over time. In light of the heightened pleading standard for fraud claims, plaintiffs' claims of MCL 333.17755(2) violations could not survive because they provided no information regarding defendants' actual wholesale costs. The connection drawn between the West Virginia data and pharmaceutical sales in Michigan was too tenuous and conclusory to state a claim for relief, and the Court of Appeals erred by holding that plaintiffs' allegations were sufficient to survive summary disposition.

4. Plaintiffs' complaints were also deficient because they failed to allege with particularity a single improper substitution transaction of the type to which MCL 333.17755(2) applies. Instead, plaintiffs only alleged the occurrence of generic drug transactions, regardless of whether they were transactions involving the substitution of generic drugs for brand-name drugs.

5. In addition to violations of MCL 333.17755(2), the class action plaintiffs alleged violations of the HCFCA, and Gurganus alleged violations of the MFCA, both premised on defendants' alleged violations of MCL 333.17755(2). The failure of plaintiffs' complaints to adequately establish violations of MCL 333.17755(2) disposed of the appeals in their entirety, and it was not necessary to evaluate the remainder of plaintiffs' arguments.

Court of Appeals' construction of MCL 333.17755(2) and its holding that plaintiffs' pleadings were sufficient to survive summary disposition reversed, remainder of Court of Appeals' judgment vacated, and trial court's grant of summary disposition to defendants reinstated.

Justice CAVANAGH, concurring in the result only, agreed that a pharmacy's obligation under MCL 333.17755(2) to pass on the savings in cost applies only to a transaction in which the pharmacy substitutes, i.e., replaces, a prescribed brand-name drug with a generic drug and that plaintiffs did not meet the heightened pleading standard under MCR 2.112(B)(1). In so holding, however, Justice CAVANAGH would have limited his consideration to the fact that plaintiffs did not specifically allege a single occurrence in which defendants dispensed a generic drug to replace a prescribed brand-name drug. Accordingly, he concurred only in the majority's result of reinstating the trial court's grant of summary disposition to defendants.

©2014 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED June 11, 2014

STATE OF MICHIGAN

SUPREME COURT

STATE OF MICHIGAN *ex rel* MARCIA
GURGANUS,

      Plaintiff-Appellee,

v                                No. 146791

CVS CAREMARK CORPORATION, CVS
PHARMACY, INC., CAREMARK, L.L.C.,
CAREMARK MICHIGAN SPECIALTY
PHARMACY, LLC, CAREMARK
MICHIGAN SPECIALTY PHARMACY
HOLDING, LLC, CVS MICHIGAN, L.L.C.,
WOODWARD DETROIT CVS, L.L.C.,
REVCO DISCOUNT DRUG CENTERS, INC.,
KMART HOLDING CORPORATION, SEARS
HOLDINGS CORPORATION, SEARS
HOLDINGS MANAGEMENT
CORPORATION, SEARS, ROEBUCK AND
CO., RITE AID OF MICHIGAN, INC.,
PERRY DRUG STORES, INC., TARGET
CORPORATION, THE KROGER CO. OF
MICHIGAN, THE KROGER CO.,
WALGREEN CO., AND WAL-MART
STORES, INC.,

      Defendants-Appellants.

_____

CITY OF LANSING and DICKINSON PRESS
INC.,

      Plaintiffs-Appellees/
      Cross-Appellants,

v                                No. 146792

RITE AID OF MICHIGAN, INC., and PERRY
DRUG STORES, INC.,

        Defendants-Appellants/
        Cross-Appellees.

_____

CITY OF LANSING, DICKINSON PRESS
INC., and SCOTT MURPHY,

        Plaintiffs-Appellees/
        Cross-Appellants,

v                                  No. 146793


CVS CAREMARK CORPORATION, CVS
PHARMACY, INC., CAREMARK, L.L.C.,
CAREMARK MICHIGAN SPECIALTY
PHARMACY, LLC, CAREMARK
MICHIGAN SPECIALTY PHARMACY
HOLDING, LLC, CVS MICHIGAN, L.L.C.,
WOODWARD DETROIT CVS, L.L.C.,
REVCO DISCOUNT DRUG CENTERS, INC.,
KMART HOLDING CORPORATION, SEARS
HOLDINGS CORPORATION, SEARS
HOLDINGS MANAGEMENT CORPORATION,
SEARS, ROEBUCK AND CO., TARGET
CORPORATION, THE KROGER CO. OF
MICHIGAN, THE KROGER CO.,
WALGREEN CO., and WAL-MART
STORES, INC.,

        Defendants-Appellants/
        Cross-Appellees.

_____

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

    This case concerns three actions—two class actions and a qui tam action brought

in the name of the state of Michigan—involving allegations that multiple pharmacies in

Michigan systematically violated MCL 333.17755(2) by improperly retaining savings

that should have been passed on to customers when dispensing generic drugs in the place of their brand-name equivalents. Under MCL 333.17755(2), when a pharmacist receives a prescription for a brand-name drug and instead dispenses the generic equivalent, the pharmacist must "pass on the savings in cost to the purchaser . . . ." The statute is clear: when a generic drug is substituted for a brand-name drug (and only then), the pharmacist must pass on the monetary difference between the wholesale cost of the brand-name drug and the wholesale cost of the generic drug.

Plaintiffs further contend that violations of § 17755(2) necessarily result in violations of the Health Care False Claim Act[1] (HCFCA) and the Medicaid False Claim Act[2] (MFCA) when pharmacists submit reimbursement claims to the state for Medicaid payments that they are not entitled to receive. Plaintiffs argue that, when submitting reimbursement claims, defendant pharmacies are impliedly and fraudulently representing that they are passing on the savings in cost when generic drugs are dispensed.

Plaintiffs' complaints, however, fail to plead facts with sufficient particularity to survive summary disposition. In their complaints, plaintiffs attempt to derive the wholesale costs of drugs dispensed by all the Michigan defendants by extrapolating from the wholesale costs in a single set of proprietary data from a single Kroger pharmacy in West Virginia. The inferences and assumptions required to implicate defendants are simply too tenuous for plaintiffs' claims to survive summary disposition. Moreover, plaintiffs' overbroad approach of identifying all transactions in which a generic drug was

---

[1] MCL 752.1001 *et seq*.

[2] MCL 400.601 *et seq*.

dispensed fails to hone in on the only relevant transactions—those in which a generic drug was dispensed *in place of* a brand-name drug. This overbroad method of pleading is deficient, especially given plaintiffs' burden to plead instances of fraud with particularity.[3]

Because plaintiffs have failed to adequately plead violations of § 17755(2), their HCFCA and MFCA claims stemming from violations of that section necessarily fail as well. As a result, their complaints fail to state a ground on which relief can be granted.[4] We reverse the Court of Appeals' construction of MCL 333.17755(2) and its holding that plaintiffs' pleadings were sufficient to survive summary disposition, vacate the remainder of the Court of Appeals' judgment, and reinstate the trial court's grant of summary disposition to defendants.

## I. FACTS AND PROCEDURAL HISTORY

Two of the consolidated cases are class actions brought by three named plaintiffs: the city of Lansing and Dickinson Press Inc. (who are third-party payors for prescription medication) and Scott Murphy (who is a consumer of prescription medication).[5] The claims before the Court arising from the class actions are alleged violations of § 17755(2) and the HCFCA. The class action plaintiffs argue that defendants systematically violated

---

[3] MCR 2.112(B)(1).

[4] MCR 2.116(C)(8).

[5] The only relevant difference between the two cases are the named defendants. In Docket No. 146793, the class action plaintiffs named every defendant in these actions with the exception of Rite Aid of Michigan, Inc., and Perry Drugs Stores, Inc. The class actions plaintiffs sued these two corporations in Docket No. 146792.

4

§ 17755(2) by charging prices for generic drugs that produced a higher profit margin than had been achieved by selling the equivalent brand-name drugs. The class action plaintiffs also plead that defendant pharmacies made false statements in contravention of the HCFCA when they submitted claims for private insurance reimbursement that are not in compliance with § 17755(2).[6]

The other consolidated case is a qui tam action alleging a single claim under the MFCA.[7] The relator, Marcia Gurganus, alleges that defendants failed to comply with § 17755(2) when they submitted prescription drug claims to the state for generic drugs dispensed to Medicaid beneficiaries and failed to pass on the "savings in cost" when dispensing the generic drugs. By doing so, Gurganus contends, defendants submitted false claims to the state in violation of the MFCA.[8]

In their first amended complaints, plaintiffs relied on annual reports from some of the defendants and a newspaper article to allege that defendant pharmacies profited more from dispensing generic drugs than from brand-name drugs. The Kent Circuit Court

---

[6] Under the HCFCA, "false" means "wholly or partially untrue or deceptive," MCL 752.1002(c), and "deceptive" is defined as including the failure to reveal a material fact, leading to the belief that the state of affairs is something other than it actually is, MCL 752.1002(b).

[7] The MFCA specifically allows a qui tam action. See MCL 400.610a(1).

[8] Using language nearly identical to the HCFCA, the MFCA defines "false" as "wholly or partially untrue or deceptive." MCL 400.602(d). In turn, "deceptive" means making a claim "that contains a statement of fact or that fails to reveal a fact, which statement or failure leads the [Department of Community Health] to believe the represented or suggested state of affair to be other than it actually is." MCL 400.602(c).

5

granted defendants summary disposition pursuant to MCR 2.116(C)(8).[9] The court dismissed all three cases without prejudice, holding that the complaints failed to plead sufficient facts and relied on unsupported inferences, alleging no acts undertaken by any of the defendants in Michigan.

Instead of providing pricing data specific to defendants in their second amended complaints, both the class action plaintiffs and Gurganus derived the allegations for their claims from specific proprietary information acquired by Gurganus revealing the wholesale costs and sales prices of brand-name and generic drugs that had been sold in 2008 at a single West Virginia Kroger pharmacy where Gurganus was employed.[10] The key data for plaintiffs are the wholesale costs of drugs, which defendants keep confidential from the public.

Plaintiffs allege that because Kroger operates retail pharmacies nationwide, acquires prescription drugs through central purchasing functions serving all its pharmacy locations, and acquires the majority of its prescription drugs from wholesalers, the wholesale costs of all the other defendants likely were not materially different. Because Kroger and the other defendants operate in substantially the same manner, and because the purchasing power for each defendant is essentially the same, said plaintiffs, one can extrapolate from the West Virginia pharmacy data the wholesale costs of each of the

---

[9] Summary disposition is appropriate when "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8).

[10] This proprietary information was a cost sheet with information regarding a number of brand-name drugs sold at the West Virginia pharmacy during 2008, including the brand sales price, brand wholesale cost, brand profit, generic wholesale cost, maximum generic price, and actual generic sales price for each of the drugs.

6

defendants in Michigan. Plaintiffs go on to identify more than 2,000 transactions by various defendants allegedly made in violation of § 17755(2) using this West Virginia data.

Defendants again moved for summary disposition pursuant to MCR 2.116(C)(8), and the trial court again granted summary disposition for failure to state a claim on which relief could be granted, this time with prejudice.[11] Unpersuaded that the class action plaintiffs' allegations stated a claim, the court noted that

> [d]espite the literally hundreds of claims referenced, there is not a single transaction alleged which identifies the drug definitively prescribed; the actual generic drug dispensed; the cost of the prescribed drug on the date in question minus its actual acquisition cost; the cost of the substituted drug on the date of substitution minus its actual acquisition cost; the subtraction and/or addition for any other applicable costs and/or payments such as those related to other third-party payers; and finally the amount actually paid by plaintiffs. There is a complete void of <u>any</u> of the critical specificity as to each transaction.

The order entered in Gurganus's action contained similar language. The trial court also dismissed Gurganus's suit on the separate but related ground that she is not an appropriate qui tam relator under the MFCA because she failed to allege facts sufficient to survive summary disposition.[12] Moreover, the trial court ruled that there is no private right of action to enforce § 17755(2) or the HCFCA. Finally, the court ruled that the HCFCA imposes only criminal, not civil, liability for its violations.

---

[11] The trial court entered three separate orders in the three cases.

[12] See generally MCL 400.610a.

The Court of Appeals reversed in substantial part, holding that plaintiffs' claims under the MFCA and the HCFCA could proceed. The panel affirmed the trial court's holding that there is no implied right of action under § 17755(2) because the Legislature provided administrative remedies for violations of the statute. However, the panel reversed the trial court's holding that the HCFCA did not allow for a private right of action. Rather, a private cause of action arises out of the "broad and mandatory statement of civil liability in MCL 752.1009 . . . ."[13]

Moreover, the Court of Appeals interpreted § 17755(2) as applicable to all transactions in which a generic drug is dispensed, and therefore the statute is not limited only to transactions in which a generic drug is substituted in place of its brand-name equivalent. The Court reasoned that there is no express language in § 17755(2) requiring such a limited interpretation.[14]

The panel also reversed the trial court's holding that plaintiffs had failed to state a claim on which relief could be granted based on the insufficiency of plaintiffs' pleadings. Because a court must accept as true plaintiffs' allegations that the wholesale costs for generic and brand-name drugs do not materially differ from those of the West Virginia Kroger, the Court of Appeals concluded that plaintiffs' claims under the false claim acts could proceed. The Court of Appeals reasoned:

---

[13] *Michigan ex rel Gurganus v CVS Caremark Corp*, unpublished opinion per curiam of the Court of Appeals, issued January 22, 2013 (Docket Nos. 299997, 299998, and 299999), p 12.

[14] *Id*. at 20-21.

8

[T]he fact that plaintiffs' complaints do not allege transactions based on information specific to defendants, and the fact that the complaints rely on some inferences, is not fatal to plaintiffs' complaints. Plaintiffs are not required to prove their case in their pleadings, and summary disposition is appropriate only if the claim cannot succeed because of some deficiency that cannot be overcome at trial.[15]

The panel rejected defendants' argument that even assuming violations of § 17755(2) had occurred, a violation of that section does not amount to knowingly submitting a false claim under either the HCFCA or the MFCA. According to the panel, implicit in a pharmacist's submission for payment is the representation that he has complied with the requirement of § 17755(2) to pass along cost savings to the purchaser. If defendants did not, in fact, pass on the required savings to the purchaser, then they concealed material facts and made the purchasers believe the state of affairs was something different than it actually was.[16]

Finally, the Court of Appeals reversed the trial court's ruling that Gurganus was not a proper relator in the qui tam action. Under the MFCA, any person may bring a qui tam action on behalf of the state for a violation of the MFCA, subject to certain restrictions.[17] Qui tam actions are not permitted, however, if the action is based on "the public disclosure of allegations or transactions" in a legal hearing, governmental hearing, report, or investigation or from the news media unless the relator is the original source of the information.[18] According to the panel, Gurganus's use of a news article did not

---

[15] *Id*. at p 18.

[16] *Id*. at 19-20.

[17] MCL 400.610a(1).

[18] MCL 400.610a(13).

9

contain "allegations or transactions" on which the complaint relied, and therefore Gurganus was not barred from bringing the qui tam action.[19]

## II.  STANDARD OF REVIEW

Issues of statutory construction are reviewed de novo,[20] as is a trial court's grant of summary disposition.[21]

## III.  DISCUSSION

### A.  INTERPRETATION OF MCL 333.17755(2).

Whether relief is sought for violation of § 17755(2) itself, or through violations of the HCFCA and the MFCA, § 17755(2) is the basis from which all of plaintiffs' claims derive.  In order to properly evaluate whether plaintiffs' allegations pass muster to survive summary disposition, we must first construe § 17755(2) to determine what a plaintiff must allege to sufficiently state a violation.

Section 17755 is a provision in Part 177 of the Public Health Code.[22]  Before the enactment of § 17755, a pharmacist was required to dispense a prescription as written and was prohibited from substituting a less expensive generically equivalent drug.[23]  After

---

[19] *Gurganus*, unpub op at 6-7.

[20] *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 488; 697 NW2d 871 (2005).

[21] *Id*.

[22] MCL 333.17701 *et seq*.

[23] Legislative Notes, *Improving Michigan's Generic Drug Law*, 9 Mich J L Reform 394, 394 (1976).

enactment, pharmacies are generally permitted to substitute generic drugs for their brand-name equivalents. Section 17755 states in pertinent part:

(1) When a pharmacist receives a prescription for a brand name drug product, the pharmacist may, or when a purchaser requests a lower cost generically equivalent drug product, the pharmacist shall dispense a lower cost but not higher cost generically equivalent drug product if available in the pharmacy, except as provided in subsection (3). If a drug is dispensed which is not the prescribed brand, the purchaser shall be notified and the prescription label shall indicate both the name of the brand prescribed and the name of the brand dispensed and designate each respectively. If the dispensed drug does not have a brand name, the prescription label shall indicate the generic name of the drug dispensed, except as otherwise provided in [MCL 333.17756].

(2) If a pharmacist dispenses a generically equivalent drug product, the pharmacist shall pass on the savings in cost to the purchaser or to the third party payment source if the prescription purchase is covered by a third party pay contract. The savings in cost is the difference between the wholesale cost to the pharmacist of the 2 drug products.[24]

The proper interpretation of Subsection (2) is disputed in the instant case. First, the parties disagree whether Subsection (2) applies to all transactions in which a generic drug is dispensed or only in situations in which a generic drug is substituted for its brand-name equivalent. Second, the parties disagree about what it means to "pass on the savings in cost."

The goal of statutory interpretation "is to give effect to the Legislature's intent, focusing first on the statute's plain language."[25] Individual words and phrases are not

---

[24] MCL 333.17755(1) and (2).

[25] *Malpass v Dep't of Treasury*, 494 Mich 237, 247-248; 833 NW2d 272 (2013) (quotation marks and citation omitted).

read in a vacuum; "we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme."[26]

Subsection (1) states, "When a pharmacist receives a prescription for a brand name drug product, the pharmacist may [or, upon request, shall] dispense a lower cost [generic drug] . . . ."[27] This introductory provision provides the context in which to read the rest of § 17755, i.e., transactions in which a pharmacist substitutes a generic drug for a brand-name drug. Subsection (2) then begins, "If a pharmacist dispenses a generically equivalent drug product, the pharmacist shall pass on the savings in cost . . . ."[28] This introductory phrase, which immediately follows Subsection (1) governing transactions in which generic drugs are dispensed in lieu of brand-name drugs, indicates that the text that follows is only triggered if the pharmacist is operating under Subsection (1). In other words, Subsection (2) only applies when the pharmacist is engaged in a substitution transaction described in Subsection (1). Surely, it would be counterintuitive for the Legislature to have inserted this provision governing *all* generic drug transactions immediately after a specific provision referring only to substitution transactions. The first subsection gives meaning to the one that follows.

Other textual support only strengthens this interpretation. Subsection (2) itself refers to a "generically *equivalent* drug product."[29] The use of the term "equivalent"

---

[26] *Id*. at 248.

[27] MCL 333.17755(1).

[28] MCL 333.17755(2).

[29] *Id*. (emphasis added).

evidences a Legislative intent to compare two different drug products. If, as the Court of Appeals concluded, Subsection (2) applies to all transactions in which generic drugs are dispensed, including transactions in which no brand-name drug was prescribed, then the term "equivalent" is effectively written out of the statute because there is no referent to which the generic drug product is equivalent.[30] Similarly, the definition of "savings in cost" in Subsection (2) refers to the difference between "the 2 drug products."[31] Without a prescribed brand-name drug that is equivalent to the generic, there is only a single drug product. These textual clues belie the Court of Appeals' conclusion that nothing in the language of the statute limits the scope of Subsection (2) to only substitution transactions.

Plaintiffs improperly read the first clause of Subsection (2)—which reads, "[i]f a pharmacist dispenses a generically equivalent drug product"—as detached from the remainder of the subsection in order to come to their preferred interpretation that Subsection (2) applies to all transactions in which a generic drug is dispensed. In doing so, they ignore the remainder of Subsection (2). Viewing an excerpt of a subsection with a magnifying glass to the exclusion of its relevant context eschews this Court's dictate that "we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme."[32] When read properly, it is clear that the

---

[30] *In re MCI Telecom Complaint*, 460 Mich 396, 414; 596 NW2d 164 (1999) ("[A] court should avoid a construction that would render any part of the statute surplusage or nugatory.").

[31] MCL 333.17755(2).

[32] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008) (quotation marks and citations omitted).

Legislature intended that Subsection (2) apply only to transactions in which a generic drug is dispensed in place of its brand-name equivalent. Plaintiffs' construction also ignores the fact that, before enactment of this statute, a pharmacist had to fill the prescription as the physician wrote it.

We now turn to the proper interpretation of the phrase "savings in cost." Subsection (2) states that a "pharmacist shall pass on the savings in cost to the purchaser" in a substitution transaction.[33] As provided in MCL 333.17755(2), "savings in cost" means "the difference between the wholesale cost to the pharmacist of the 2 drug products."

Defendants argue that the statute only requires pharmacists to sell the substituted generic drug at the same price that a purchaser would pay had the generic been prescribed in the first instance. In other words, pharmacists are prohibited from increasing the customer's cost of the substituted generic drug. However, this reading ignores the definition in the statute: The amount that a pharmacist must pass on to a purchaser or third-party payer is the difference between the wholesale cost of the two drugs. In other words, "savings in cost" equals the brand-name wholesale cost minus the generic wholesale cost.[34] As a practical matter, Subsection (2) provides a maximum allowable

---

[33] MCL 333.17755(2).

[34] Defendants seem to suggest that interpreting the statute by its plain terms recognizes an outmoded method of how pharmacies actually set their drug prices and that interpreting the statute by its terms would be impractical in light of these realities. If this is the case, it is a concern more properly addressed to the Legislature, whose purview is the enactment of legislation, as compared to the interpretation of that legislation, which is the province of the courts. See *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992) ("[A]rguments that a statute is unwise or results in bad policy should be addressed

profit regardless of whether the pharmacist dispenses a generic drug or a brand-name drug—he cannot make more from dispensing a generic drug than he could from a brand-name drug.

Furthermore, a 2013 article in Pharmacy & Therapeutics explained that "patients have taken the same drug prescribed or dispensed under more than one trademark" and provided examples of generic drugs that have multiple brand-name drugs associated with them.[35] This confirms the requirement in § 17755(2) that an actual substitution transaction must occur; otherwise, there is no basis for determining which brand-name wholesale cost to use when calculating the savings in cost.

## B. ADEQUACY OF PLAINTIFFS' PLEADINGS

Having construed § 17755(2), we turn to whether plaintiffs' pleadings adequately state a claim for relief for violation of this statute. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint. A motion for summary disposition is properly granted if "[t]he opposing party has failed to state a claim on which relief can be granted."[36] When reviewing a motion brought under MCR 2.116(C)(8), the court considers only the pleadings.[37] Moreover, the court must accept

---

to the Legislature.").

[35] Grissinger, *Multiple Brand Names for the Same Generic Drug Can Cause Confusion*, 38 Pharm & Therapeutics 305 (2013), available at <http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3737992/pdf/ptj3806305.pdf> (accessed June 2, 2014) [http://perma.cc/V5MG-DHLF]. For instance, fluoxetine is marketed as both Sarafem and Prozac; finasteride is marketed as both Propecia and Proscar.

[36] MCR 2.116(C)(8).

[37] MCR 2.116(G)(5).

all factual allegations in the complaint as true, along with all reasonable inferences or conclusions that can be drawn from them.[38] However, conclusory statements that are unsupported by allegations of fact on which they may be based will not suffice to state a cause of action.[39]

Because plaintiffs' claims are based on alleged fraudulent activity, the heightened pleading standard for fraud claims apply. MCR 2.112(B)(1) provides, in full, "In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity."[40]

Plaintiffs' complaints rely on wholesale drug cost data from a single Kroger pharmacy in West Virginia. From that proprietary data, plaintiffs extrapolate thousands of allegedly fraudulent transactions by defendants in violation of § 17755(2). In doing so, plaintiffs rely on various assumptions. These assumptions include (1) each defendant acquires its prescription drugs from just a few wholesalers, (2) the prescription drug purchasing power is substantially the same for all defendants, (3) the wholesale prices each defendant pays are materially the same, and (4) the wholesale prices do not change over time.

---

[38] See *Wade v Dep't of Corrections,* 439 Mich 158, 162-163; 483 NW2d 26 (1992).

[39] *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003).

[40] Generally, fraud " 'is not to be presumed lightly, but must be clearly proved,' " *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008), quoting *Palmer v Palmer*, 194 Mich 79, 81; 160 NW 404 (1916), and must be proved by " 'clear, satisfactory and convincing evidence,' " *Cooper*, 481 Mich at 414, quoting *Youngs v Tuttle Hill Corp*, 373 Mich 145, 147; 128 NW2d 472 (1964). It is for these reasons that our court rules create an enhanced burden to plead fraud with particularity.

When faced with the heightened pleading standard for fraud claims, plaintiffs' claims of § 17755(2) violations cannot survive. Plaintiffs rely on a small set of cost data from a single out-of-state pharmacy during a brief time period to charge numerous Michigan defendants with systematic fraudulent activity across a multiyear period. The connection drawn between the West Virginia data and pharmaceutical sales in Michigan is simply too tenuous and conclusory to state a claim for relief.[41] As the Court of Appeals correctly recognized: "The critical number in plaintiffs' formula is the acquisition cost of the generic and brand name drugs. This is true because the sale prices of generic and brand name drugs are publicly known and easily identifiable; however, the acquisition cost is proprietary to each defendant."[42] But the Court of Appeals erred by holding that plaintiffs' allegations were sufficient to survive summary disposition. Without precise allegations of fraud committed by defendants, plaintiffs' allegations valuing quantity over quality do not meet the heightened pleading standard applicable here.[43]

Plaintiffs' complaints are also deficient because they fail to particularly allege a single improper substitution transaction. As discussed earlier, § 17755(2) applies only to transactions in which a generic drug is substituted for a brand-name drug. Defendants

---

[41] Construing the federal analogue to our pleading rules, the United States Supreme Court has held that when the pleaded facts "do not permit the court to infer more than the *mere possibility* of misconduct," the complaint fails to state a claim for relief. See *Ashcroft v Iqbal*, 556 US 662, 679; 129 S Ct 1937; 173 L Ed 2d 868 (2009) (emphasis added); FR Civ P 8(a).

[42] *Gurganus*, unpub op at 17.

[43] MCR 2.112(B)(1).

17

claim that plaintiffs have not satisfied the heightened pleading requirement because plaintiffs do not identify substitution transactions in their complaints. Instead, plaintiffs only allege generic drug transactions, regardless of whether they are substitution transactions.[44]

Without distinguishing substitution transactions from transactions in which a generic was simply dispensed, plaintiffs' overbroad approach is deficient—especially under the heightened pleading standard. Plaintiffs essentially allege that defendants had a statutory duty to pass on the savings in cost from every sale of a generic drug. Yet as previously discussed, the statute simply does not impose such a duty on pharmacists. By alleging that thousands of generic drug transactions were improper, regardless of whether any of the transactions involved a substitution, plaintiffs failed to plead any transaction proscribed under § 17755(2) because the transactions are not of the type covered by § 17755(2), i.e., substitution transactions.[45] In other words, plaintiffs' allegations assert concern about transactions not prohibited by law.[46]

---

[44] Plaintiffs alleged at oral argument that this absence of specific substitution transactions stems from plaintiffs' alleged lack of access to specific instances in which defendant pharmacies engaged in substitution transactions. However, plaintiff Scott Murphy, as a firsthand uninsured purchaser, would have evidence from the receipt at the point of sale whether a pharmacist dispensed a brand-name drug as prescribed by his doctor or whether the pharmacist instead dispensed a generic equivalent. Thus, at least one of the plaintiffs has, or could have, the knowledge of whether, in a specific transaction by a named defendant, a substitution transaction occurred.

[45] See *White v Beasley*, 453 Mich 308, 325; 552 NW2d 1 (1996) (holding that the plaintiff's tort complaint failed to state a claim because she failed to allege facts showing that the defendant owed her a duty).

[46] Because plaintiffs have failed to plead any transaction proscribed under § 17755(2), we need not—and do not—determine whether § 17755(2) contains an implied right of

## C.  PLAINTIFFS' REMAINING CLAIMS

In addition to violations of § 17755(2), the class action plaintiffs allege violations of the HCFCA and Gurganus alleges violations of the MFCA.  Both claims are premised on defendants' alleged violations of § 17755(2).  As already outlined briefly, plaintiffs contend that defendants make false statements in contravention of the HCFCA and MFCA when they submit claims for Medicaid or private health insurance reimbursement that are not in compliance with § 17755(2).[47]  In other words, plaintiffs argue that certifying for reimbursement a claim founded on a transaction that was allegedly in violation of § 17755(2) constitutes a false claim under the respective false claim acts.

Because plaintiffs' complaints do not adequately establish violations of § 17755(2), this Court need not evaluate the propriety of the remainder of plaintiffs' arguments.  Assuming for the sake of argument that claims under the HCFCA and MFCA *may* be derived from violations of § 17755(2), plaintiffs' failure to sufficiently allege violations of § 17755(2) necessarily means that they fail to allege derivative violations of the false claim acts.

The failure of the pleadings thus disposes of the appeal in its entirety.  Any discussion of these remaining derivative claims would constitute dicta because it is not

___

action.

[47] The HCFCA provides that a "person shall not make or present or cause to be made or presented to a health care corporation or health care insurer a claim for payment of health care benefits knowing the claim to be false."  MCL 752.1003(1).  The MFCA provides that a "person shall not make or present or cause to be made or presented . . . a claim . . . knowing the claim to be false."  MCL 400.607(1).

necessary to resolve the case before us.[48] We decline to opine on matters unnecessary to the resolution of this case.

## IV. CONCLUSION

MCL 333.17755(2) requires that when a generic drug is substituted for a brand-name drug (and only then), the pharmacist must pass on the difference between the wholesale cost of the brand-name drug and the wholesale cost of the generic drug.

Plaintiffs' allegations, which entirely rely on deriving wholesale costs of drugs for all the Michigan defendants by extrapolating from the wholesale costs in a single data set from a single West Virginia pharmacy, are simply too tenuous to survive summary disposition. Additionally, plaintiffs' approach of identifying all transactions in which a generic drug was dispensed fails to highlight the only relevant transactions—those in which a generic drug was substituted in place of a brand-name drug. This overbroad method of pleading is deficient, especially in light of the requirement that instances of fraud be pleaded with particularity.

Because plaintiffs have failed to allege sufficient facts to state a violation of § 17755(2), plaintiffs' remaining derivative claims under the HCFCA and the MFCA are

---

[48] See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985) ("Since we conclude that plaintiff failed even to meet the threshold requirements of proof to make out a prima facie claim of intentional infliction of emotional distress, we are constrained from reaching the issue as to whether this modern tort should be formally adopted into our jurisprudence by the well-settled rule that *statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication*.") (emphasis added); *People v Borchard-Ruhland*, 460 Mich 278, 287-288; 597 NW2d 1 (1999) (questioning why, in a prior case, the Court had addressed arguments after analyzing a dispositive evidentiary issue).

20

unsustainable. We reverse the Court of Appeals' construction of MCL 333.17755(2) and its holding that plaintiffs' pleadings were sufficient to survive summary disposition, vacate the remainder of the Court of Appeals' judgment, and reinstate the trial court's grant of summary disposition to defendants.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

STATE OF MICHIGAN

SUPREME COURT

STATE OF MICHIGAN *ex rel* MARCIA
GURGANUS,

      Plaintiff-Appellee,

v                                   No. 146791

CVS CAREMARK CORPORATION, CVS
PHARMACY, INC., CAREMARK, L.L.C.,
CAREMARK MICHIGAN SPECIALTY
PHARMACY, LLC, CAREMARK
MICHIGAN SPECIALTY PHARMACY
HOLDING, LLC, CVS MICHIGAN, L.L.C.,
WOODWARD DETROIT CVS, L.L.C.,
REVCO DISCOUNT DRUG CENTERS, INC.,
KMART HOLDING CORPORATION, SEARS
HOLDINGS CORPORATION, SEARS
HOLDINGS MANAGEMENT
CORPORATION, SEARS, ROEBUCK AND
CO., RITE AID OF MICHIGAN, INC.,
PERRY DRUG STORES, INC., TARGET
CORPORATION, THE KROGER CO. OF
MICHIGAN, THE KROGER CO.,
WALGREEN CO., and WAL-MART
STORES, INC.,

      Defendants-Appellants.

_____

CITY OF LANSING and DICKINSON PRESS INC.,

      Plaintiffs-Appellees/
      Cross-Appellants,

v                                   No. 146792

RITE AID OF MICHIGAN, INC., and PERRY
DRUG STORES, INC.,

      Defendants-Appellants/
      Cross-Appellees.

_____

CITY OF LANSING, DICKINSON PRESS INC.,
and SCOTT MURPHY,

        Plaintiffs-Appellees/
        Cross-Appellants,

v                                       No. 146793

CVS CAREMARK CORPORATION, CVS
PHARMACY, INC., CAREMARK, L.L.C.,
CAREMARK MICHIGAN SPECIALTY
PHARMACY, LLC, CAREMARK
MICHIGAN SPECIALTY PHARMACY
HOLDING, LLC, CVS MICHIGAN, L.L.C.,
WOODWARD DETROIT CVS, L.L.C.,
REVCO DISCOUNT DRUG CENTERS, INC.,
KMART HOLDING CORPORATION, SEARS
HOLDINGS CORPORATION, SEARS
HOLDINGS MANAGEMENT CORPORATION,
SEARS, ROEBUCK AND CO., TARGET
CORPORATION, THE KROGER CO. OF
MICHIGAN, THE KROGER CO.,
WALGREEN CO., and WAL-MART
STORES, INC.,

        Defendants-Appellants/
        Cross-Appellees.

_____

CAVANAGH, J. (*concurring only in the result*).

Underlying all of plaintiffs' claims in this consolidated appeal is the allegation that

defendants violated MCL 333.17755(2) by failing to "pass on the savings in cost" when

dispensing generic drugs. I agree with the majority that § 17755(2) could not be clearer

that the phrase "savings in cost" means "the difference between the wholesale cost to the

pharmacist of the 2 drug products." Further, as the majority explains, a pharmacy's

obligation under § 17755(2) to pass on the savings in cost only applies to a transaction in

which the pharmacy substitutes, i.e., replaces, a prescribed brand-name drug with a

generic drug. However, unlike the majority, I would look no further than the fact that

2

plaintiffs did not specifically allege a single occurrence in which defendants dispensed a generic drug as a replacement for a prescribed brand-name drug to hold that plaintiffs did not meet the heightened pleading standard of MCR 2.112(B)(1). Accordingly, I concur only in the majority's result reinstating the trial court's grant of summary disposition to defendants.

## I. HEIGHTENED PLEADING STANDARD UNDER MCR 2.112(B)(1)

It is well established that "fraud is not to be lightly presumed, but must be clearly proved." *Palmer v Palmer*, 194 Mich 79, 81; 160 NW 404 (1916). Memorializing this standard, MCR 2.112(B)(1) states that "[i]n allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." See *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 283-284; 803 NW2d 151 (2011) (applying MCR 2.112(B)(1) to a common-law-fraud claim). In this case, plaintiffs argue that defendants' alleged failures to pass on the savings in cost under § 17755(2) constitute false claims for healthcare or Medicaid benefits under the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*, and the Health Care False Claim Act (HCFCA), MCL 752.1001 *et seq.*[1] Specifically, plaintiffs assert that defendants have

---

[1] The HCFCA states:

> A person who receives a health care benefit or payment from a health care corporation or health care insurer which the person knows that he or she is not entitled to receive or be paid; or a person who knowingly presents or causes to be presented a claim which contains a false statement, shall be liable to the health care corporation or health care insurer for the full amount of the benefit or payment made. [MCL 752.1009.]

Similarly, the MFCA states:

3

received overpayments to which they are not entitled from purchasers, third-party payment sources, and the state by knowingly violating § 17755(2) and that plaintiffs must be reimbursed in full for every dispensation of a generic drug within the limitations period applicable to their lawsuits. Accordingly, the heightened pleading standard applies because plaintiffs' claims sound in fraud.[2]

Generally, when applying the federal heightened pleading standard to claims brought under the federal False Claims Act, 31 USC 3729 *et seq.*, federal courts have developed the guideline that plaintiffs must allege "with particularity the who, what, when, where, and how of the alleged fraud." *United States ex rel Ge v Takeda Pharm Co Ltd*, 737 F3d 116, 123 (CA 1, 2013) (citations and quotation marks omitted).[3]

> A person who receives a benefit that the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact, or who engages in any conduct prohibited by this statute, shall forfeit and pay to the state the full amount received, and for each claim a civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct by the person. [MCL 400.612(1).]

The HCFA and the MFCA also define "knowingly." See MCL 752.1002(h); MCL 400.602(f).

[2] This conclusion is consistent with the approach taken by other states and federal courts that have addressed state and federal false claims acts. See *California ex rel McCann v Bank of America, NA*, 191 Cal App 4th 897, 906; 120 Cal Rptr 3d 204 (2011) (" 'As in any action sounding in fraud, the allegations of a [California False Claims Act] complaint must be pleaded with particularity.' ") (citations omitted); *Utah v Apotex Corp*, 2012 Utah 36, ¶ 23 & n 4; 282 P3d 66 (2012) (stating that "[e]very federal circuit court to consider the issue has concluded that claims brought under the federal False Claims Act (FCA) must be pled with particularity under rule 9(b) of the Federal Rules of Civil Procedure").

[3] See, also, *Chesbrough v VPA, PC*, 655 F3d 461, 467 (CA 6, 2011) (stating that claims must assert " '(1) the time, place, and content of the alleged misrepresentation,' (2) 'the

Importantly, plaintiffs' qui tam and class action lawsuits allege fraudulent schemes that involve numerous potential violations of the HCFCA and the MFCA over a long period of time. In light of these circumstances, the application of MCR 2.112(B)(1) must remain flexible so that it is measured within the context of the specific claims alleged. See *Utah v Apotex Corp*, 2012 Utah 36, ¶ 27; 282 P3d 66 (2012). See, also, *id*. (explaining that the particularity requirement is " 'not a straitjacket' " for pleading fraud claims), quoting *United States ex rel Grubbs v Kanneganti*, 565 F3d 180, 190 (CA 5, 2009).

For example, the "heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control." *Apotex*, 2012 Utah at ¶ 27 (citation and quotation marks omitted). Also, "where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct." *Id*. (citation and quotation marks omitted). See, also, *United States ex rel Joshi v St Luke's Hosp, Inc*, 441 F3d 552, 557 (CA 8, 2006) (explaining that the plaintiff was not required "to allege specific details of *every* alleged fraudulent claim," but the complaint "must provide *some*

---

fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury") (citations omitted). Although "Michigan courts are not bound by" federal courts' interpretations of the federal court rules, when the Michigan Court Rules "are nearly identical to the federal requirements, we find it reasonable to conclude that similar purposes, goals, and cautions are applicable to both." *Henry v Dow Chem Co*, 484 Mich 483, 499; 772 NW2d 301 (2009); compare MCR 2.112(B)(1) with FR Civ P 9(b).

representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors").[4]

Finally, in determining whether a plaintiff's claim under the HCFCA or the MFCA has been pleaded with sufficient particularity, a court should not lose sight of the fact that although one aim of the court rule "is to discourage nuisance suits and frivolous accusations," *United States ex rel Pogue v Diabetes Treatment Ctrs of America, Inc*, 238 F Supp 2d 258, 269 (D DC, 2002), the purpose of the heightened pleading standard is "to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond," *Chesbrough v VPA, PC*, 655 F3d 461, 466 (CA 6, 2011), quoting *United States ex rel Bledsoe v Community Health Sys, Inc*, 501 F3d 493, 503 (CA 6, 2007).

## II. ANALYSIS OF PLAINTIFFS' COMPLAINTS

As previously mentioned, a pharmacy's obligation under § 17755(2) is not implicated whenever a generic drug is dispensed, even though a pharmacy may, generally speaking, incur greater profit when generic drugs are dispensed than when brand-name drugs are dispensed. Instead, a pharmacy is obligated to "pass on the savings in cost" only if, in a given transaction, the pharmacy dispenses a generic drug in *substitution* for a brand-name drug that had been prescribed. Thus, a substitution transaction is a necessary component of a violation of § 17755(2), which becomes an essential element to plaintiffs'

---

[4] Furthermore, "a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted" because "requir[ing] these details at pleading is one small step shy of requiring production of actual documentation with the complaint . . . ." *Grubbs*, 565 F3d at 190.

6

claims under the HCFCA and the MFCA because they are predicated on alleged violations of § 17755(2). Applying the aforementioned heightened pleading standard under MCR 2.112(B)(1), plaintiffs have not met the particularity requirement because their complaints do not allege a single, let alone "representative examples," *Joshi*, 441 F3d at 557, of instances in which defendants failed to pass on the savings in cost for a substitution transaction.

Instead of pleading substitution transactions in their complaints, plaintiffs simply list series of transactions in 2008 that represent alleged occasions when defendants merely dispensed generic drugs, with no indication of whether the dispensed generics resulted from the pharmacies' replacement of a brand-name drug with a generic drug.[5] Requiring plaintiffs to identify the alleged transactions that specifically violate § 17755(2) is necessary to give sufficient notice to defendants of the particular

---

[5] The following excerpt from the second amended complaint in Docket No. 146791, the qui tam action, illustrates the nature of plaintiffs' allegations as they relate to the specific transactions pleaded:

> Rather than alleging out of the millions of prescriptions drug transactions with Defendants each of the transactions that violated the Michigan generic drug pricing laws and the Medicaid False Claims Act, Plaintiff alleges . . . specific information about Medicaid claims submitted by Defendants for . . . five generic drugs during the fourth quarter of 2008 as examples of Medicaid claims by Defendants that violated Michigan law. These examples are not exhaustive of those purchases for which Defendants failed to pass on to the State of Michigan the difference between the acquisition cost of the generic drug and brand-name drug as required by Michigan law. [Emphasis omitted.]

The class-action plaintiffs' complaints include nearly identical language demonstrating the gravamen of all plaintiffs' allegations.

7

transactions they are to defend against. See *Chesbrough*, 655 F3d at 466. Furthermore, under the circumstances of this case, this requirement does not create an insurmountable burden. As the majority notes, whether some plaintiffs received a generic drug in replacement for a previously prescribed brand-name drug is information that at least the plaintiffs who are uninsured buyers would have access to.[6] See *Spelman v Addison*, 300 Mich 690, 702; 2 NW2d 883 (1942) ("In determining the sufficiency of a bill of complaint, consideration should be given to the character of the plaintiff's alleged cause of action and to such circumstances as whether the records and knowledge of the facts on which the plaintiff relies are in his possession or largely, if not exclusively, in the possession of defendant."); *Apotex*, 2012 Utah at ¶ 27.

Given that plaintiffs did not specifically identify in their complaints a single transaction that, if assumed true, would constitute a violation of § 17755(2), they have failed to meet the heightened particularity standard for pleading fraud claims, and, thus, summary disposition in favor of defendants under MCR 2.116(C)(8) is proper. See *Spiek v Dep't of Transp*, 456 Mich 331, 339; 572 NW2d 201 (1998) (holding that summary disposition under MCR 2.116(C)(8) was appropriate when "[t]aking all plaintiffs' factual allegations as true, the complaint fails to allege an essential element of their cause of

_____

[6] According to the trial court, plaintiff Marcia Gurganus "concede[d] that she has no way of knowing whether the prescription was written using the brand-name or generic . . . ." However, for the purposes of her qui tam action, that fact does not relieve Gurganus of her pleading burden; rather, her lack of knowledge regarding the nature of the transactions between defendant pharmacies and the state serves to question her ability to bring a qui tam action under MCL 400.610a(13) as "the original source of the information."

action").[7]  Accordingly, I concur only in the majority's result reinstating the trial court's grant of summary disposition to defendants.

Michael F. Cavanagh

---

[7] Like the majority, I do not find it necessary to opine on the merits of the class-action plaintiffs' claim that § 17755(2) was intended as an implied cause of action.  However, assuming arguendo that such a cause of action exists, the claims would be based on a statutory violation that is not necessarily fraudulent in nature, and, thus, the heightened pleading standard under MCR 2.112(B)(1) might not apply.  Nevertheless, summary disposition in favor of defendants would be appropriate because plaintiffs' complaints are void of a bare allegation pertaining to the critical requirement for their possible claim under § 17755(2), i.e., the complaints failed to include *a mere statement* that defendants failed to pass on the savings in cost with respect to a substitution transaction.  Instead, plaintiffs' theory of liability would essentially impose on defendants the obligation to pass on the "**full** cost savings realized by the pharmacies' lower acquisition cost of the generic drug" "obtained by the pharmacies in dispensing a generically equivalent drug product . . . ."  Therefore, "the legal sufficiency of the claim on the pleadings alone . . . determine[s]" that plaintiffs have not "stated a claim on which relief may be granted." *Spiek*, 456 Mich at 337.