*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICK-JOSEPH GROULX,

        Plaintiff-Appellant,

and

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v

RASHID IQBAL,

        Defendant-Appellee.

UNPUBLISHED
November 18, 2024
10:26 AM

No. 366784
Bay Circuit Court
LC No. 2022-003668-CZ

---

PATRICK-JOSEPH GROULX,

        Plaintiff-Appellant,

and

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v

MCLAREN,

        Defendant-Appellee.

No. 367588
Bay Circuit Court
LC No. 2022-003667-CZ

---

PATRICK-JOSEPH GROULX,

        Plaintiff-Appellant,

-1-

and

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v                                              No. 367591
                                                 Bay Circuit Court

ADAM D. NICHOLAS,                  LC No. 2022-003664-CZ

        Defendant-Appellee.

PATRICK-JOSEPH GROULX,

        Plaintiff-Appellant,

and

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v                                              No. 367592
                                                 Bay Circuit Court

CHRISTINE GRANSDEN,             LC No. 2022-003665-CZ

        Defendant-Appellee.

PATRICK-JOSEPH GROULX,

        Plaintiff-Appellant,

and

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v                                              No. 367593
                                                 Bay Circuit Court

RYAN COX,                          LC No. 2022-003669-CZ

        Defendant-Appellee.

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In these five consolidated appeals, plaintiff appeals as of right orders granting summary disposition in favor of each defendant. In Docket No. 367588, we reverse summary disposition in favor of defendant McLaren as to plaintiff's claims for eavesdropping and failing to provide a clean environment. In all other respects, we affirm.

I. FACTUAL BACKGROUND

According to plaintiff, a nonparty was spraying herbicide on a field next to his home, and plaintiff was directly sprayed by some of the herbicide. He suffered physical health problems as a result, and sought medical treatment for those ailments. At the suggestion of his treating physician, plaintiff explored psychiatric help to manage his pain and other issues. Pursuant to that suggestion, he went to an outpatient medical facility, where he was seen by defendants, nurse practitioner Christine Gransden and Dr. Ryan Cox. According to medical notes from the visit, plaintiff was referred there for a psychiatric evaluation for paranoia. Dr. Cox believed plaintiff was not in any apparent physical distress, but he appeared "paranoid and delusional," with "persecutory" thought processes and with poor concentration, impulse control, insight, and judgment.

Plaintiff was admitted to McLaren's inpatient behavioral health unit. Plaintiff contends that he agreed to admit himself there because Gransden and Dr. Cox threatened to have him involuntarily committed if he did not. Plaintiff promptly demanded to leave, but his request was refused. As to McLaren, plaintiff also alleges he was assigned to a room that lacked hot water and was infested with biting insects. While at McLaren, plaintiff was seen by Dr. Rashid Iqbal and Dr. Adam Nicholas. Dr. Nicholas kept extensive notes, which reflected that plaintiff was severely malnourished when he was admitted. Dr. Nicholas noted that plaintiff's thinking appeared to be anxious, paranoid, delusional, tangential, disorganized, and unreliable. Plaintiff was uncooperative about taking his medication, initially claiming that he was taking it and later admitting to spitting it out. Relevant to his eavesdropping claim, plaintiff averred that on an unspecified date, he told his ex-wife over the telephone that he expected to be kept for another 45 days, and, the next day, Dr. Nicholas asked who told him that he would be kept for another 45 days. Dr. Nicholas initiated involuntary commitment proceedings, and plaintiff eventually submitted to injections with an antipsychotic medication to secure his release. Dr. Nicholas's notes reflect that plaintiff tolerated the medication well, but plaintiff contends that he suffered serious side effects lasting a year.

A couple of months after his release, plaintiff was involuntarily readmitted to a different hospital for a few days. He appeared for a hearing before the Saginaw Probate Court, which concluded that it did not find clear and convincing evidence that plaintiff required treatment. However, the court did recommend that plaintiff "stay in touch with medical professionals . . . . " Plaintiff received a bill for services from Dr. Iqbal, which he contends is illegal. Plaintiff demanded that defendants destroy his behavioral file, and defendants refused. Several months

later, an unidentified caller from "[redacted] Behavioral Health" asked the Saginaw County Sheriff's Office to perform a wellness check on plaintiff, noting that he had just dropped off letters "ranting about lawsuits and other things that didn't make sense," (capitalization omitted), so they "wanted Groulx checked on" due to concerns that he was not taking his medication.

Plaintiff filed his complaints in this case on November 10, 2022. His approach to litigation was haphazard. Plaintiff presented an array of similar claims against the various defendants in separate cases instead of a single case, and made efforts to hold some defendants in default despite his failure to serve them properly. He also attempted to unilaterally impose contractual "conditions" on defendants in his complaints and made essentially baseless claims that defendants were acting in bad faith. Beyond that, plaintiff demanded large sums of money damages. Defendants moved for summary disposition, largely arguing that plaintiff's claims were all premised on the contention that defendants misdiagnosed him, which constituted medical malpractice regardless of how plaintiff presented those claims. In relevant part, defendants additionally pointed out that plaintiff had not sent notices of intent, as required by MCL 600.2912b. Plaintiff contended that he had sent such notices contemporaneously with the filing of his complaint. The trial court, after fielding various objections filed by plaintiff, agreed that his claims sounded in medical malpractice and that the applicable statute of limitations had expired. The court dismissed plaintiff's claims with prejudice. This appeal followed.

II. ANALYSIS

A. A NOTE ON PLAINTIFF'S APPEAL

Plaintiff's complaint, supporting documents, and briefing are challenging to follow. Many of his arguments are repetitive and poorly supported, if at all. As a self-represented litigant, he is entitled to generosity and lenity in construing his pleadings. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). That lenity is not infinite and does not extend to crafting arguments on his behalf. This Court will consider his arguments to the extent they can be discerned. *In re JCR II*, ___ Mich App ___, ___ n 6; ___ NW3d ___ (2024) (Docket No. 367472); slip op at 7 n 6. Most of plaintiff's issues can be discerned well enough for this Court to address them, but we will not engage in guesswork as to the others.

B. STANDARDS OF REVIEW

This Court "review[s] de novo questions of statutory interpretation and whether a trial court properly granted summary disposition." *In re Guardianship of Malloy*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165018); slip op at 12. The trial court's rulings and orders do not indicate which subrule it relied on when granting summary disposition. The court was presented with and seemingly considered evidence beyond the pleadings, so we will treat its grants of summary disposition as having been made under MCR 2.116(C)(10). *Cary Investments LLC v Mount Pleasant*, 342 Mich App 304, 312-313; 994 NW2d 802 (2022). A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The trial court must consider all the evidence in the light most favorable to the nonmoving party and may grant summary disposition only if there is no genuine question of material fact. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party,

leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The interpretation of common-law doctrines is reviewed de novo. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023). Because "a trial court necessarily abuses its discretion when it makes an error of law," appellate review of a trial court's discretionary decision that was based on a legal determination is "effectively" de novo. *Milne v Robinson*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164190); slip op at 4 (quotation marks, brackets, and citation omitted).

## C. NATURE OF PLAINTIFF'S CLAIMS

We first address the extent to which plaintiff's claims sound in medical malpractice. The trial court correctly found that most of plaintiff's claims sound in medical malpractice, but erred as to two of his claims, which sound in ordinary negligence.

"A medical malpractice claim is sometimes difficult to distinguish from an ordinary negligence claim," but "the distinction is often critical." *Trowell v Providence Hosp and Med Ctrs, Inc*, 502 Mich 509, 517-518; 918 NW2d 645 (2018). A person must commence an action by filing a complaint "within the applicable statute-of-limitations period . . . which for medical malpractice actions is generally two years." *Ottgen v Katranji*, 511 Mich 223, 231, 245; 999 NW2d 359 (2023). "A plaintiff may not evade the appropriate limitation period by artful drafting," such as characterizing malpractice as ordinary negligence. *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250, 253; 506 NW2d 562 (1993). Our Supreme Court has explained:

> A medical malpractice claim is distinguished by two defining characteristics. First, medical malpractice can occur only within the course of a professional relationship. Second, claims of medical malpractice necessarily raise questions involving medical judgment. Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the fact-finder. Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions. [*Bryant v Oakpointe Villa Nursing Centre*, 471 Mich 411, 422; 684 NW2d 864 (2004) (quotation marks, brackets, and citations omitted).]

Preliminarily, a court must address whether a defendant is capable of committing medical malpractice. *Estate of Swanzy v Kryshak*, 336 Mich App 370, 377-378; 970 NW2d 407 (2021). There is no serious dispute that all five defendants are capable of committing medical malpractice. Furthermore, there is no serious dispute that defendants' alleged wrongs occurred in the course of a professional relationship with plaintiff. Thus, the question we must ask here is whether plaintiff's claims relate "to matters involving medical judgment outside the common knowledge and

-5-

experience of the fact-finder." *Meyers v Rieck*, 509 Mich 460, 469; 983 NW2d 747 (2022) (quotation marks, brackets, and citation omitted). If the jury can only evaluate the reasonableness of a medical professional's conduct "after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved." *Bryant*, 471 Mich at 423. Likewise, if a claim requires a plaintiff to establish that a particular medical diagnosis was incorrect, such a claim necessarily sounds in medical malpractice because it "requires the presentation of expert testimony addressing questions involving the exercise of medical judgment or medical competency." *Lucas v Awaad*, 299 Mich App 345, 363-364; 830 NW2d 141 (2013).

## 1. FALSE NARRATIVE, FALSE IMPRISONMENT, AND EMOTIONAL DISTRESS

Plaintiff's "false narrative" claims must be addressed first, because most of his other claims refer back to defendants' continuing use of a "false narrative." These claims sound in medical malpractice because they essentially state that defendants erroneously diagnosed him with a variety of mental health issues in lieu of treating him for his real malady of chemical exposure. However creatively plaintiff presents these claims, they are premised on the allegation that defendants misdiagnosed him. Plaintiff can therefore only prevail by proving that the diagnoses were, in fact, misdiagnoses. We recognize that plaintiff provided some documentation in an attempt to support the argument that the diagnoses were wrong. However, this only establishes a question of fact that would have to be resolved by a trier of fact with the benefit of expert testimony. Therefore, plaintiff's "false narrative" claims sound in medical malpractice. *Lucas*, 299 Mich App at 364.

Plaintiff additionally alleges a combination of "fraudulent imprisonment" and/or "conspiracy to permanently imprison" claims against McLaren and Drs. Iqbal, Nicholas, and Cox. No such cause of action exists,[1] but there is a cause of action for "false imprisonment," which is defined as "an unlawful restraint on a person's liberty or freedom of movement." *Walsh v Taylor*, 263 Mich App 618, 627; 689 NW2d 506 (2004) (quotation marks and citations omitted). "[T]he essence of a claim of false imprisonment is that the imprisonment is false, *i.e.*, without right or authority to do so." *Moore v Detroit*, 252 Mich App 384, 388; 652 NW2d 688 (2002) (quotation marks, brackets, and citation omitted). Because MCL 330.1403 provides that involuntary mental health treatment may only be provided pursuant to the Mental Health Code, MCL 330.1001 *et seq.*, involuntary mental health treatment contrary to the Mental Health Code could conceivably constitute false imprisonment. However, plaintiff identifies no violations of the Mental Health Code by any defendant. Defendants could also conceivably be liable under MCL 330.1439 if they were grossly negligent or engaged in willful and wanton misconduct. However, the soundness of their decisions would, again, require expert medical testimony. Plaintiff's "fraudulent imprisonment" claims are therefore either meritless because they are unsupported or sound in medical malpractice.

---

[1] As will be discussed, plaintiff adds the word "fraudulent" to most of his claims, which is not sufficient to transform a claim into a fraud claim.

Plaintiff also raises claims for emotional distress. He alleges that he suffered emotional distress because of the allegedly untrue diagnoses and because of being committed to a behavioral health facility where he was surrounded by people he found upsetting. These claims depend on his "false narrative" and imprisonment claims, so they also sound in medical malpractice. It is not necessary to discuss the elements of "emotional distress," because, as noted, the factual basis for any such claim is clearly based on his "false narrative" and false imprisonment claims. Both claims require expert testimony to establish that plaintiff's diagnoses were actually untrue, and thus sound in medical malpractice. *Lucas*, 299 Mich App at 364.

## 2. DEFAMATION

Plaintiff also asserts various claims for slander and libel. Those claims either sound in medical malpractice or were barred by the one-year statute of limitations applicable to defamation claims.

Slander and libel are both forms of defamation. See *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005), quoting MCL 600.5805. The distinction is that libel is written and slander is spoken. See *Glazer v Lamkin*, 201 Mich App 432, 438; 506 NW2d 570 (1993). Defendants have a constitutional right to defend against a defamation claim by showing the allegedly defamatory statements to be true and made in good faith. *Howe v Detroit Free Press*, 440 Mich 203, 225-226; 487 NW2d 374 (1992). The statement need only be "substantially accurate," meaning "the gist or the sting" of the statement would be the same, regardless of minor inaccuracies as to details. *Hawkins v Mercy Health Servs, Inc*, 230 Mich App 315, 332-333; 583 NW2d 725 (1998). Defamation claims are subject to a one-year statute of limitations. MCL 600.5805(1).

Plaintiff's slander and libel claims are mostly based on defendants' creation of the "false narrative" that he suffered from various mental illnesses. Those claims fail for two reasons. First, as discussed, the "false narrative" claims sound in medical malpractice. Second, plaintiff filed his complaints on November 10, 2022, which is more than a year after the "false narrative" was allegedly created and entered in plaintiff's file.

Plaintiff also asserts that he was defamed because the police were called to his home in 2022. As earlier noted, on September 13, 2022, an unidentified caller from "[redacted] Behavioral Health" asked the Saginaw County Sheriff's Office to perform a wellness check on plaintiff. A police report on the incident noted that plaintiff had dropped off letters "ranting about lawsuits and other things that didn't make sense," [capitalization omitted], leading the caller to believe plaintiff was off his medication. It is not clear how this constitutes defamation. Even presuming that it could be considered defamatory, plaintiff would have to establish that it "was published negligently." MCL 600.2911(7). Usually, "a jury does not require expert testimony to determine what a reasonable person would do in an ordinary negligence case." *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 197; 555 NW2d 733 (1996). But the circumstances in this case are unusual, because the reasonableness of the publication turns in part on what the publisher already knew about plaintiff's mental health. As discussed, the propriety of defendants' belief that plaintiff had mental health problems cannot be determined without expert testimony. Furthermore, plaintiff does not allege that any of the specific facts in the police report were untrue, and determining the truth of the "gist" of any implication that he had mental health problems could

not be established without expert testimony. Therefore, this claim also sounds in medical malpractice.

### 3. PLAINTIFF'S BEHAVIORAL FILE

Plaintiff additionally raises two claims regarding his behavioral file: one claiming that he requested the file be destroyed and it was not, and the other claiming that defendants barred him from accessing it. As to the destruction claim, plaintiff alleged in his complaint that defendants were violating his rights by failing to destroy the file. Presuming that plaintiff properly brought a claim for destruction of the file, that claim would sound in medical malpractice. Licensed health professionals are required to keep certain records for at least seven years. *People v Anderson*, 330 Mich App 189, 197; 946 NW2d 825 (2019). Under MCL 333.16213(4), a professional "may" destroy those records under certain circumstances. The word "may" is generally a grant of permission to exercise discretion, not a mandate. *Ass'n of Home Help Care Agencies v Dep't of Health and Human Servs*, 334 Mich App 674, 687; 965 NW2d 707 (2020). Plaintiff's argument, to the extent it can be discerned, seems to be that he had a right to have his file destroyed because of alleged inaccuracies in that file. This claim sounds in medical malpractice because plaintiff would need to present expert medical testimony to establish that the diagnoses in the file were actually untrue. In any event, plaintiff provides no support for the proposition that he might have a right to compel defendants to destroy his file under any circumstance, and we will not search for any such authority on his behalf. *In re JCR II*, ___ Mich App at ___ n 6; slip op at 7 n 6.

Likewise, plaintiff presents an argument regarding access to his behavioral file, but we note that he did not include any relevant factual allegations in his complaint. Furthermore, he only raised this argument for the first time at a hearing on the motions for summary disposition below. "Michigan is a traditional notice-pleading jurisdiction with a relatively low bar for the sufficiency of initial allegations, particularly because parties generally will not yet have the benefit of discovery." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). Nevertheless, a complaint must support a cause of action with factual assertions, not merely conclusory allegations. *Wolfenbarger v Wright*, 336 Mich App 1, 16; 969 NW2d 518 (2021). Here, plaintiff did not even do that, so he never brought any such claim. "A party is bound by their pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint." *Bailey v Antrim Co*, 341 Mich App 411, 424; 990 NW2d 372 (2022). Strictly speaking, the trial court could not have "dismissed" any claim regarding access to plaintiff's behavioral file, because no such claim was present in any of these actions, but the trial court arrived at the correct result of finding any such claim is now precluded.

### 4. MEDICAID FALSE CLAIMS ACT

In contrast, some of plaintiff's claims clearly do not sound in medical malpractice. Plaintiff alleges that Dr. Iqbal violated the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*, by sending him an invoice for services despite his status as a Medicaid recipient. Plaintiff alleges that defendants other than Dr. Iqbal violated the MFCA by contributing to the "false narrative," so those claims would sound in medical malpractice. However, a billing-related claim might not sound in medical malpractice if the claim is strictly limited to a commercial or business decision.

See *Lucas*, 299 Mich App at 366-368. We conclude that plaintiff's MFCA claim does not sound in medical malpractice as to Dr. Iqbal.

Nevertheless, this claim was properly dismissed because plaintiff does not support it with facts in the record or with applicable legal authority. Plaintiff cites only MCL 400.610a and 42 CFR § 447.15. The statute only addresses certain procedures for bringing a claim under the MFCA. It does not identify any specific conduct forbidden or required under the Act. Plaintiff has not explained how Dr. Iqbal violated the statute. The federal code provision, and one internal reference therein, do not absolutely prohibit billing a Medicaid recipient. Rather it forbids providers from denying services to a patient on the basis of the patient's inability to pay. Dr. Iqbal did not deny plaintiff any services. We cannot and will not guess at plaintiff's thought processes. *In re JCR II*, ___ Mich App at ___ n 6; slip op at 7 n 6. While this claim does not sound in medical malpractice as to Dr. Iqbal, it fails for lack of merit because plaintiff does not support it with facts or law.

## 5. EAVESDROPPING

Plaintiff's eavesdropping claim against McLaren does not appear to sound in medical malpractice. " 'Eavesdrop' or 'eavesdropping' means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." MCL 750.539a. "Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony." MCL 750.539c. A person may be entitled to civil remedies, including damages, against someone who commits eavesdropping against them. MCL 750.539h. On the face of plaintiff's eavesdropping claim, there is no obvious reason why medical judgment would be involved. This claim against McLaren does not appear to sound in medical malpractice.

We emphasize that we do not hold that it is a meritorious claim. We only hold that summary disposition was inappropriate on the basis that the claim sounds in medical malpractice and is therefore barred by the statute of limitations applicable to such claims. Because the record is not sufficiently developed to permit further analysis, we remand this issue back to the trial court for further proceedings.

## 6. CLEAN ENVIRONMENT

Similarly, plaintiff's claim that McLaren failed to provide him with a clean and sanitary environment does not appear to sound in medical malpractice. While many aspects of providing care for a person in a hospital require medical judgment, it is difficult to imagine how failing to fix the hot water or failing to remediate biting insects calls for medical judgment. Giving plaintiff the benefit of the doubt, this appears to be a claim for personal injury arising out of ordinary negligence.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed*, 512 Mich at 110. The existence of a duty is a question of law for the courts, and it is based on policy and

consideration of several factors, including the relationship between the parties. *Id*., 512 Mich at 110-112. "A common-law duty of care exists when the relationship between the actor and the injured person gives rise to a legal obligation on the actor's part for the benefit of the injured person." *Marion v Grand Trunk Western Ry Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164298); slip op at 4-5 (quotation marks and citation omitted). MCL 330.1708(2), which is part of the Mental Health Code, MCL 330.1001 *et seq*., expressly states that "Mental health services shall be provided in a safe, sanitary, and humane treatment environment." In an unpublished opinion,[2] this Court held that the statute does not create "a private right of action, although we think it does outline a standard of care applicable to an *ordinary negligence* claim." *Ackley v Kingswood Hosp, Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket No 346350), p 4 (emphasis added).

As with plaintiff's eavesdropping claim, we do not hold that this claim is necessarily meritorious. Rather, we hold only that providing a hospital patient with basic sanitation facilities or a room free from biting-insect infestations does not, at least under the circumstances of this case, sound in medical malpractice. The record is insufficiently developed to permit further analysis, so this issue must be remanded for further proceedings.

## 7. FRAUD

It is finally necessary to address plaintiff's purported "fraud" claims. As earlier noted, plaintiff adds the word "fraudulent" to all of his claims other than his formal claim for medical malpractice (which he does not appear to pursue on appeal). None of them articulate an actionable claim for fraud under the circumstances.

"Fraud claims must be pleaded with particularity, addressing each element of the tort," so a "plaintiff must allege that (1) the defendant made a representation that was material, (2) the representation was false, (3) the defendant knew the representation was false, or the defendant's representation was made recklessly without any knowledge of the potential truth, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff actually acted in reliance, and (6) the plaintiff suffered an injury as a result." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229-230; 859 NW2d 723 (2014). A claim of fraud cannot be established if the plaintiff did not rely on the allegedly false statement, irrespective of whether any third party relied on the statement. *MacDonald v Barbarotto*, 161 Mich App 542, 547; 411 NW2d 747 (1987).[3] "[C]onclusory statements that are unsupported by allegations of fact on which they may be based will not suffice to state a cause of action." *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 63; 852 NW2d 103 (2014). Furthermore, courts are not bound by parties'

---

[2] Unpublished opinions of this Court are not binding, but they may be considered persuasive or instructive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 359371 and 359372); slip op at 8.

[3] "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding on this Court, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Davis v Secretary of State*, ___ Mich App ___, ___ n 10; ___ NW3d ___ (2023) (Docket No. 362841); slip op at 9 n 10.

-10-

labels, *Trowell*, 502 Mich at 519. For example, where a paragraph in a complaint included the word "intentionally" but did not assert any facts showing that the defendant acted intentionally, that paragraph was insufficient to properly allege that the defendant acted intentionally. *Wolfenbarger v Wright*, 336 Mich App 1, 16-17; 969 NW2d 518 (2021). Therefore, adding the word "fraudulent" to a claim has no effect by itself and does not suffice to transform a claim into one for fraud. Here, plaintiff's "fraud" claims fail for several reasons.

First, plaintiff's claims are mostly based on defendants' medical diagnoses, all of which plaintiff disputes. Therefore, he must prove that the diagnoses actually were untrue. Doing so would require expert medical testimony, so the claims sound in medical malpractice. *Lucas*, 299 Mich App at 364.

Second, plaintiff only makes bare, conclusory allegations that defendants made any untrue statements on which he relied. Plaintiff alleged that each defendant was in some way responsible for creating a "false narrative." He further alleged that he acted in reliance upon the false narrative under duress. In support, plaintiff merely cited his "Affidavit of Truth," which does not explain anything. Plaintiff does not identify any specific statements that were untrue and that he relied on. "General allegations are not sufficient to state a claim of fraud." *Van Marter v American Fidelity Fire Ins Co*, 114 Mich App 171, 184; 318 NW2d 679 (1982); see also *State ex rel Gurganus*, 496 Mich at 63.

Third, while plaintiff's complaints, affidavits, and briefs are challenging to follow, he makes it perfectly clear that he never believed that he had any mental health problems. Thus, even if defendants' diagnoses were untrue, plaintiff never believed them to be true, and he identifies no way in which he acted in reliance on the truth of those diagnoses. At most, he alleges that third parties are relying on those statements, but that does not constitute fraud. Plaintiff alleged that he expected to receive treatment for chemical exposure, but he went to McLaren on the advice of his own treating physician, not because any defendant allegedly promised him such treatment. Plaintiff's treating physician is not a party to this action. In short, plaintiff has not adequately stated any claim sounding in fraud, and nothing in his complaints or affidavits suggest that he would be able to do so.

## D. STATUTE OF LIMITATIONS

Because the trial court correctly found that most of plaintiff's claims sounded in medical malpractice, we must next address whether the trial court correctly determined that the applicable limitations period had run as to those claims. We hold that the trial court correctly determined that plaintiff's claims sounding in medical malpractice were time-barred.

Pursuant to MCL 600.5838a(1), a medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Even if a plaintiff has only suffered a single injury, the plaintiff's injury or injuries may arise out of multiple discrete acts or omissions, each of which could give rise to an independent claim with an independent accrual date. *Kincaid v Cardwell*, 300 Mich App 513, 525-526; 834 NW2d 122 (2013). A plaintiff cannot "resurrect the last-treatment rule through ambiguous or creative pleading." *Id*. at 526. Nevertheless, the last date of treatment can provide an upper boundary to the last possible date on which a medical

malpractice claim could have accrued. See *Watts v Henry Ford Health Sys*, 480 Mich 1055; 743 NW2d 897 (2008) (the last date the defendant hospital had any contact with the decedent was the last date the plaintiff's medical malpractice action could have accrued).

A medical malpractice claim is not "commenced" unless a plaintiff files a notice of intent that includes all of the information required by MCL 600.2912b(4) and has waited at least 182 days. *Boodt v Borgess Med Ctr*, 481 Mich 558, 562-563; 751 NW2d 44 (2008). "However, if a defendant fails to respond to the notice of intent within 154 days, a plaintiff may file a complaint immediately and need not await the expiration of 182 days." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 60 n 1; 642 NW2d 663 (2002), citing MCL 600.2912b(7) and (8). Generally, if a plaintiff files a complaint without filing the requisite notice of intent, the complaint should be dismissed without prejudice, so the plaintiff may file a notice of intent. Dismissal with prejudice is proper if the plaintiff is "unable to refile his complaint because the applicable period of limitations ha[s] run." *Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 27-28; 809 NW2d 403 (2011). For purposes of medical malpractice actions, days are counted by including the final day and excluding the day of the act or event forming the basis for a claim. *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 314-319; 901 NW2d 577 (2017). A notice of intent sent on the final day of the limitations period preserves that final day of the limitations period and the day on which the notice is filed. *Id*. at 323-324.

## 1. ACCRUAL

It is challenging to discern when plaintiff's claims, if any, might have accrued, because of the chaotic nature of his pleadings. We will, for purposes of resolving this appeal, presume they accrued as late as the evidence permits.

The easiest dates to consider are plaintiff's claims against Gransden. Plaintiff alleged that Gransden committed wrongs only on November 9 or 10, 2020, and nothing in the record hints that Gransden was involved in plaintiff's treatment after November 10, 2020. Therefore, any claims plaintiff might have against Gransden accrued no later than November 10, 2020. Plaintiff's claims against Dr. Iqbal are slightly more challenging. While the record does not indicate that Dr. Iqbal was involved in plaintiff's treatment after November 19, 2020, plaintiff alleged that Dr. Iqbal committed wrongs against him through November 24, 2020, when he was released from McLaren. Thus, we will accept the latter date for the purposes of this discussion.[4] The remaining defendants are less easily addressed. Plaintiff alleged that they committed wrongs from November 9 through 24, 2020, which, again, corresponds to plaintiff's stay at McLaren. Plaintiff also alleges that they committed wrongs from February 5, 2021 through February 10, 2021, apparently regarding his readmission to a different hospital. We accept the February 5 date because it is conceivable that defendants had some involvement in procuring that readmission, but we do not accept the latter

---

[4] Dr. Iqbal sent plaintiff an invoice on March 31, 2021, but that date would only be relevant to plaintiff's MFCA claim, which we have determined is not meritorious.

-12-

date because there is simply no evidence that defendants had any involvement in plaintiff's treatment during that readmission.[5]

## 2. MCL 600.5851

Plaintiff contends that he is entitled to extend the applicable limitations period by one year under MCL 600.5851 because he was under a "disability" of "insanity" until February 10, 2021. Plaintiff may not avail himself of any such extension because he was not actually disabled within the meaning of the statute.

Our Supreme Court has held that "the insanity saving provision" in MCL 600.5851 applies to medical malpractice claims. *Vega v Lakeland Hosps at Niles and St Joseph, Inc*, 479 Mich 243, 251; 736 NW2d 561 (2007). However, MCL 600.5851(2) provides:

> The term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane.

This subsection clearly provides that a judicial declaration of insanity is irrelevant, and the touchstone is whether the person actually cannot comprehend their rights because of "a condition of mental derangement." But plaintiff's lawsuit is entirely premised on the assertion that he never suffered from any kind of mental illness. Again, "[a] party is bound by their pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint." *Bailey*, 341 Mich App at 424. And while "[i]n general, parties are permitted to plead inconsistent claims and facts in the alternative," *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 459; 875 NW2d 254 (2015), plaintiff has not done so here. Instead, he attempts to take advantage of a disability while simultaneously claiming he never suffered from said disability. Plaintiff is bound by his claims that he was not actually insane at any time, so he is definitionally not entitled to any extension of time under MCL 600.5851.[6]

---

[5] Although plaintiff alleges various other wrongs on later dates, those wrongs pertain entirely to his claims for defamation and regarding his behavioral file, which we have already determined to be barred or lacking in merit irrespective of whether they might sound in medical malpractice.

[6] Plaintiff also seems to misunderstand how the grace period would work, even if it was available to him. He appears to believe it would extend the applicable limitations period by a year, but it would not. MCL 600.5851(1) could potentially grant a plaintiff a year in which to bring an action "although the period of limitations has run." It is not a tolling provision that suspends a statute of limitations for a year; rather, it is a grace period independent of the statute of limitations. *Honig v Liddy*, 199 Mich App 1, 3-4; 500 NW2d 745 (1993). *If* the provision applied, it would give plaintiff one year after the removal of a disability within which to file his complaint. He claims the "disability" was removed on February 10, 2021, so he would have had until February 10, 2022 to file. At that time, however, the two-year limitations period was still running, so any period of time that might have been available to him under MCL 600.5851(1) is irrelevant.

### 3. LIMITATIONS PERIOD

Some of plaintiff's claims might still have been viable on November 10, 2022, when he filed his complaints. However, because plaintiff failed to comply with the notice of intent requirements for commencing a medical malpractice action, he never "commenced" any of his claims sounding in medical malpractice, and they became time-barred by the time the trial court entered its orders granting summary disposition. Therefore, while we disagree in part with the trial court's reasoning, it arrived at the correct outcome.

Nothing in the record suggests that plaintiff ever sent a letter purporting to be a notice of intent to McLaren. Plaintiff was required to send a notice of intent to McLaren even if his medical malpractice claims against McLaren were entirely vicarious. *Potter v McLeary*, 484 Mich 397, 402-403; 774 NW2d 1 (2009); see also *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 49; 594 NW2d 455 (1999). Therefore, any medical malpractice claims plaintiff might have had against McLaren were never tolled beyond two years. Plaintiff did not comply with the notice of intent requirement of MCL 600.2912b, so he never "commenced" a medical malpractice claim against McLaren. Even assuming the latest possible date any of his claims sounding in medical malpractice could have accrued, the two-year limitations period expired as to any such claims against McLaren shortly after plaintiff filed his complaints.

Plaintiff sent letters to the individual defendants on either November 10 or 11, 2022. This was approximately contemporaneous with the filing of his complaints. He contends that these qualified as notices of intent.[7] Plaintiff sent his letter to Gransden on November 11, 2022, but there is no evidence or allegation that Gransden had any involvement with plaintiff's care after November 10, 2020. Therefore, any medical malpractice claims plaintiff might have had against Gransden were already time-barred by the time he sent a possible notice of intent, so they also could not have been tolled beyond two years. Plaintiff's claims against Gransden might have fallen within the two-year period, but plaintiff failed to file the complaint after sending a notice of intent and waiting the requisite notice period. Consequently, he never "commenced" a medical malpractice claim against Gransden. As with McLaren, any such claims became time-barred shortly after he filed his complaint.

Plaintiff's letters to Drs. Cox, Nicholas, and Iqbal likewise could have potentially tolled some of his claims against those defendants. But as we previously acknowledged, plaintiff failed to wait 154 to 182 days after sending his letters before he filed these actions. As a result, his complaints could not serve to commence any medical malpractice action. Some defendants even pointed this out to plaintiff while he still had time to save most of his claims by seeking dismissal without prejudice, but plaintiff failed to do so. Instead, plaintiff advanced arguments that, to the extent they can be comprehended, relied on irrelevant statutes, such as MCL 600.2912, which only states that malpractice may be maintained against any state-licensed professional. The limitations periods continued running.

---

[7] We need not consider whether the contents of the letters were sufficient under MCL 600.2912b(4), because the timing of those letters and of plaintiff's complaints is dispositive.

By the time the trial court decided Dr. Iqbal's motion for summary disposition on June 15, 2023, plaintiff's medical malpractice claims against Dr. Iqbal were time-barred. At that point, dismissal without prejudice would have been futile. Thus, dismissal was properly with prejudice. Some of plaintiff's claims against Dr. Nicholas and Dr. Cox might still have been viable by the time the trial court orally ruled on their motions for summary disposition, but by the time the trial court actually entered its orders, following the trial court's proper rejection of a number of objections by plaintiff on irrelevant grounds, any possible limitations period had run as to those defendants as well. Therefore, again, dismissal without prejudice would have been futile, and dismissal was properly with prejudice. In other words, all of plaintiff's claims sounding in medical malpractice were properly dismissed with prejudice because they were time-barred.

## E. SUMMARY DISPOSITION

Plaintiff also advances several arguments that more generally challenge the propriety of granting summary disposition. None of those arguments have merit.[8]

### 1. RIGHT TO JURY TRIAL

Plaintiff first argues that he has a constitutional right to a jury trial because he demanded one, and granting summary disposition under MCR 2.116 violates that right; in other words, summary disposition is unconstitutional. Plaintiff is wrong. There is no right to a jury trial if there are no issues of fact to be determined. It is the duty of the court to first determine whether there are any material factual controversies for the jury to resolve. *Moll v Abbott Laboratories*, 444 Mich 1, 26-28; 506 NW2d 816 (1993), abrogated on other grounds by *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 389-394; 738 NW2d 664 (2007). The role of the jury is only to resolve questions of fact; "[a]ll other questions, being questions of law, are for the court." *Phillips v Mirac, Inc*, 470 Mich 415, 426; 685 NW2d 174 (2004). "Accordingly, excluded from the jury's purview are such matters as whether a party has met its burden of proof, whether certain evidence may be considered, which witnesses may testify, whether the facts found by the jury result in a party being held liable, and the legal import of the amount of damages found by the jury." *Id*. at 428. In other words, summary disposition is proper and constitutional if a trial court correctly determines that there are no material questions of fact at issue.

### 2. STATUTES OF LIMITATION

Plaintiff next argues that statutes of limitations should be unconstitutional. This argument has, again, long been rejected. "Michigan law has long provided that the resolution of claims in court actions is subject to periods of limitation." *Nielsen v Barnett*, 440 Mich 1, 8; 485 NW2d 666 (1992). "Indeed, it is well established that the Legislature may impose reasonable procedural requirements, such as a limitations period, on a plaintiff's available remedies even when those

---

[8] In light of our resolution of this appeal, we need not address plaintiff's argument regarding the affidavit of merit requirement for medical malpractice claims.

remedies pertain to alleged constitutional violations." *Rusha v Dep't of Corrections*, 307 Mich App 300, 307; 859 NW2d 735 (2014). Statutes of limitations are not unconstitutional per se.

Plaintiff poses several hypothetical scenarios under which a limitations period could prevent a person from pursuing a claim through no fault of the person. Under some circumstances, at least involving constitutional claims, a limitations period might be so "harsh and unreasonable" that it effectively deprives plaintiffs of access to the courts. *In re Muskegon Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363764); slip op at 5-7. However, plaintiff offers no evidence that he was deprived of access to the courts. He failed to commence his lawsuits within two years, but that does not mean doing so was impossible. Plaintiff speculates that the different periods of limitations for different kinds of claims "may raise concerns about equal treatment under the law," but advances no actual argument in support of that conjecture. Even giving plaintiff the maximum possible lenity as a self-represented litigant, a total absence of argument constitutes abandonment. *In r JCR II*, ___ Mich App at ___ n 6; slip op at 7 n 6. Finally, the Legislature's role is to set policy, and the courts may not interfere with that policy merely because the policy might be perceived as unfair. *In re MSL*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368581); slip op at 12. Statutes of limitations are constitutional in general, and plaintiff fails to show that the particular statute of limitations here is so unreasonable that it should be deemed unconstitutional.

## 3. BURDEN OF PROOF

Plaintiff argues that defendants were required to provide material evidence in support of their motions for summary disposition and establish entitlement to summary disposition by a preponderance of the evidence. Plaintiff is incorrect.

The party moving for summary disposition under MCR 2.116(C)(10) has the *initial* burden of production, which may be satisfied in one of two ways: the moving party may either "submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). If the moving party supports its position, the nonmoving party with the ultimate burden of proof must show that there is a genuine question of material fact. *Id*. at 362-363. A party's motion might be insufficiently supported if they cite no evidence or cite only evidence that does not support their argument. *Simmons v Telecom Credit Union*, 177 Mich App 636, 641; 442 NW2d 739 (1989). The moving party need not supply documentary evidence in support of facts that are not disputed. See *Relative Time Films, LLC v Covenant House Mich*, 344 Mich App 155, 167 n 10; 999 NW2d 64 (2022). Furthermore, a party may properly move for summary disposition under MCR 2.116(C)(10) by arguing that the nonmoving party has the ultimate burden of proof at trial, and that the nonmoving party cannot meet that burden. *Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op at 7-8.

Plaintiff's proposed "preponderance of the evidence" standard for the moving party is contrary to established law. "Preponderance of the evidence" pertains to a plaintiff's ultimate burden of persuasion, not to the required quantum of production at a motion for summary disposition. See *Hazle v Ford Motor Co*, 464 Mich 456, 465 n 10; 628 NW2d 515 (2001). A

"preponderance of the evidence" standard would not make sense in a summary disposition context, because the trial court may not weigh the evidence, evaluate credibility, or resolve questions of material fact when deciding a motion for summary disposition. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

When deciding motion for summary disposition, the court's function is limited to determining whether there is a genuine issue of fact for trial. *Lytle v Malady*, 458 Mich 153, 175 n 23; 579 NW2d 906 (1998). Here, defendants relied on documents already provided by plaintiff to show that, while there might be some factual disputes, none of them were *material* because resolving those disputes could not affect the outcome of the case. *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 612; 997 NW2d 755 (2022). Therefore, the burden shifted back to plaintiff. Because he had the ultimate burden of proof, plaintiff was not permitted to "rely on mere allegations or denials in pleadings[.]" *Quinto*, 451 Mich at 362. Instead, he was required to "go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. "To meet this burden, the nonmoving party must present documentary evidence establishing the existence of a material fact, and the motion is properly granted if this burden is not satisfied." *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Plaintiff largely failed to do so.

Plaintiff cites three cases in support of his position, none of which have any apparent relevance beyond the passing mention of the phrases "material fact" or "preponderance of the evidence." Plaintiff's logic is not apparent, and we will not attempt to guess it. *In re JCR II*, ___ Mich App at ___ n 6; slip op at 7 n 6. The "preponderance of the evidence" standard applies to the burden of proof *plaintiff* must overcome to prove his case *at trial*; it has nothing to do with summary disposition. Defendants were required to provide some support for their argument that there was no question of material fact to resolve, but they did so. Plaintiff's argument therefore lacks merit.

## 4. JUDICIAL BIAS

Plaintiff next claims that the trial court was biased against him, but his argument is so incoherent and unsupported that it exceeds any conceivable lenity we could extend to him.

Plaintiff argues that the trial court made multiple rulings against him. Plaintiff does not identify any of these other than a vague reference to "remov[ing] the fraud from consideration" while "determin[ing] that the applicable statute of limitations was one year" as to eavesdropping, which constituted infliction of unusual punishment. Even presuming that ruling was wrong, the prohibition against "unusual punishment" refers to *criminal* punishment for people convicted of a crime, not to civil matters. *Butler v Detroit*, 149 Mich App 708, 720-721; 386 NW2d 645 (1986). Furthermore, even repeated erroneous rulings against a party are insufficient to establish bias or prejudice. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Plaintiff otherwise argues that the trial court excused mistakes made by defendants' attorneys but did not excuse his own mistakes. However, plaintiff identifies *none* of these alleged mistakes. While plaintiff is entitled to lenity and generosity in construing his arguments, this Court will not go so far as to invent arguments for him. *In re JCR II*, ___ Mich App at ___ n 6; slip op at 7 n 6.

-17-

F.  AMENDMENT OF COMPLAINT

Plaintiff finally argues that he is entitled to amend his complaint to address any deficiencies therein.  Plaintiff accurately sets forth the general rule, but is not entitled to amend his complaint.

In general, a party whose claims are summarily dismissed should be given leave to amend their complaint unless the amendment would be futile.  *Weymers v Khera*, 454 Mich 639, 658-659; 563 NW2d 647 (1997).  If the proposed amendments would be legally insufficient on their face or merely restatements of the same allegations, the amendment would be futile.  *PT Today, Inc v Comm'r of Office of Fin and Ins Services*, 270 Mich App 110, 143; 715 NW2d 398 (2006).  If the plaintiff's claims would be subject to summary disposition in any event, amendment need not be granted.  *Id*. at 144-145.  Here, plaintiff sought leave to amend his complaint in order to remove his formal "medical malpractice" claims so that his other claims could go forward.  However, as earlier discussed, most of his claims sounded in medical malpractice because of their factual underpinnings, rather than because of their formal labels.  This proposed amendment would not have helped him.

Plaintiff also presents a confusing argument that he was unable to determine who called law enforcement to his residence in 2022.  He says that without access to discovery, he cannot determine the identity of the caller.  It is not clear what this has to do with amending his complaint.  As discussed above, any request by defendants to perform a wellness check would involve an exercise of medical judgment under the circumstances, so the claim sounds in medical malpractice.  The identity of the caller would not change that.  To the extent this argument could be characterized as a basis for amending his complaint, it would fail because amendment would be futile.

III.  CONCLUSION

In Docket Nos. 366784, 367591, 367592, and 367593, we affirm the trial court's grant of summary disposition and dismissal in favor of Gransden and Drs. Iqbal, Nicholas, and Cox. Because they have prevailed in full, these defendants may each tax costs in their respective cases. MCR 7.216(A).

In Docket No. 367588, we reverse in part the trial court's grant of summary disposition in favor of McLaren as to plaintiff's claims for eavesdropping and for failing to maintain a clean environment, and we remand those claims to the trial court for further proceedings consistent with this opinion.  In all other respects, we affirm.  We do not retain jurisdiction.  McLaren and plaintiff shall bear their own costs, neither having prevailed in full.  MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

-18-